Smith, C. J.
The advertisement made August 16, 1888,' by the Board of Public Affairs of Cincinnati, for sealed proposals for the improvement of “ West Sixth street, from the East line of Price Hill Road, to Boldface Road,” “ in accordance with the specifications on file in the office of the board,” contained the state *543 ment, that the board reserved the right of rejecting any and all bids.
The proposal or bid of Hussey, the relator, was to improve “ West Sixth street, from the East line of Price Hill Road, to Boldface Creek,” according to the terms and stipulations particularly set forth therein. It was addressed to the Board of Public Affairs, was signed by him, and contained this express stipulation, “ hereby agreeing that your board has the right to reject any, or all of the bids.”
The board having in this instance, exercised the option expressly reserved to it by the advertisement for proposals, and granted to it in the bid made by Hussey himself, we are utterly unable to see any legal ground for complaint by him, or anything which would in the least degree justify a court in requiring the board to do that which it was stipulated between the parties it was not to be bound to do.
There wa| certainly nothing illegal or against public policy in making such a provision, but on the contrary, it is a wise and beneficent one, which might in many instances, go far to protect the rights of the city. Therefore if the rejection of all the bids in this case, including that of the relator, had been a mere arbitrary act of the board, and an unwise exercise of the discretion conferred by„ the law and the stipulations of the parties upon it, we cannot see how the court can rightly interfere in a case of this kind. By the express terms of our statute, a writ of mandamus can only properly issue, “ commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station.” “It may require an inferior tribunal to exercise its judgment or to proceed to the discharge of any of its functions, but cannot control judicial discretion.” See sections 6741-2 of the Revised Statutes.
But if it were otherwise, and the act of the board were subject to judicial revision in a case of this kind, to determine whether the discretion of the board was properly exercised, we would still be of the opinion that a proper case is not made here for a resort to the equitable and extraordinary writ of mandamus. There was certainly a discrepancy between the language of the original resolution of the board declaring it *544 necessary to improve this part of Sixth street — the ordinance requiring it to be done — the advertisement for proposals for doing it, and the bids as made, so far as they undertook to describe the Western terminus of the improvement — the first and last of them describing it, as Boldface Greek, and the other two as Boldface Road. It appears from the testimony in the case, that at this point, the official maps of the city show no such road, but that there is a Boldface Road laid down thereon, in a different part of the city, and it was on this state of fact that the city solicitor, when the matter was referred to him, reported to the board, and recommended the rejection of all of the bids, and the adoption of a new ordinance, correctly describing, the Western terminus of the improvement, which the board at once did, repealing the old ordinance.
There is no claim but that the solicitor acted in good faith ; and on the knowledge possessed by him, his advice was right. The board, also in good faith, acted in accordance with such advice given by the officer who was its adviser as to matters of law; and certainly in a proceeding involving the expenditure of $150,000, and where it was important that every step necessary to make the assessment legal, should be taken, they acted wisely in so doing. And this is so without reference to the proposition which it appears had been made by the railroad company, to do a large part of the improvement without any cost to the city.
In our view then, the reservation of the right to reject all bids • for an improvement, gives to the board, the right to do so without responsibility to the bidder, and the fact that it was done while laboring under a mistake, does not affect that right.
There is a suggestion made to us, that the board would now be willing to accept this bid, and contract with the relator if the court should be of the opinion that the misdescription of the Western terminus in the ordinance to improve, and the advertisement for bids, did not invalidate or hazard the assessment. We have not deemed it important that we should carefully consider this question, for the reason that the bids were in fact rejected, and, as we hold, with full power on the *545 part of the board to do so, and then the ordinance to improve, which was essential to .the carrying on of the enterprise, was itself repealed; so that as the matter now stands, the. board, ■even if it desired to accept the original bid, has not the legal right to do so.
J. A. Jordan, for plaintiff.
Theodore Horstman, city solicitor, contra.
The result of this holding of course is, that the application for the issuance of a writ of mandamus to compel the board to .accept the bid of the relator, and to award the contract to him, must be refused, and the petition is dismissed at the costs of the relator.